EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Michael W. Colón Vega<br><br>Peticionario<br><br>v.<br><br>Iris V. Díaz Lebrón<br><br>Recurrida | Certiorari<br><br>2023 TSPR 27<br><br>211 DPR ___ |

Número del Caso:  CC-2022-0257


Fecha:  14 de marzo de 2023


Tribunal de Apelaciones:

    Panel Especial


Abogado de la parte peticionaria:

    Lcdo. José Emmanuel Santiago Cardona


Abogada de la parte recurrida:

    Lcda. Cynthia G. Espéndez Santiesteban


Materia:  Procedimiento Civil:  Procede convalidar una sentencia emitida por un tribunal del estado de la Florida mediante el procedimiento de exequátur, ya que ese foro tenía jurisdicción, observó el debido proceso de ley y  la sentencia no estuvo viciada por fraude.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael W. Colón Vega

    Peticionario

       v.                           CC-2022-0257

Iris V. Díaz Lebrón

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 14 de marzo de 2023.

Debemos determinar si corresponde otorgarle entera fe y crédito a una sentencia de un tribunal de Florida en un caso de custodia. Concluimos en la afirmativa ya que ese foro tenía jurisdicción, observó el debido proceso de ley, y la sentencia no estuvo viciada por fraude. Específicamente, determinamos que el envío de las notificaciones del tribunal a la dirección en la que se emplazó personalmente a una parte que no compareció durante el trámite judicial, constituye una notificación adecuada según el debido proceso de ley. Es decir, esa dirección es la última conocida y es una razonablemente calculada.

Además, el caso de autos nos permite revisitar los contornos de la figura de fraude en relación con el procedimiento de exequátur. Aclaramos que alegar fraude en oposición al exequátur no es una alternativa para relitigar en sus méritos los hechos que dieron lugar a una sentencia en otra jurisdicción. La Regla 55.5 de Procedimiento Civil, infra, no da cabida a que se alegue fraude como subterfugio para revisar las decisiones de otro foro o traer evidencia que debió presentarse en el procedimiento original. El fraude que impide la convalidación es solo aquel que vicia la sentencia de tal modo que rebasa los preceptos de entera fe y crédito.

I

El 19 de septiembre de 2019, el Sr. Michael W. Colón Vega presentó ante el Tribunal de Primera Instancia una petición de exequátur. Solicitó que se convalidaran y ejecutaran ciertas órdenes y una sentencia emitida por el tribunal de Florida sobre determinación de paternidad. Pidió que se ordenara a la Sra. Iris V. Díaz Lebrón entregarle los dos hijos menores de edad de ambos en virtud de la sentencia de Florida que le otorgó la custodia. Incluyó, entre otras cosas, copias certificadas del equivalente al procedimiento de emplazamiento en ese estado (*Notice of filing return of service*), y del *Final judgment of paternity*.

Por su parte, la señora Díaz Lebrón se opuso y solicitó desestimación. Alegó que la demanda ante el tribunal de Florida se sustentó en alegaciones falsas y fraudulentas.

Además, adujo que ella y los menores fueron sometidos a violencia familiar por parte del señor Colón Vega. Afirmó que el tribunal de Florida no adquirió jurisdicción sobre su persona ni hijos por falta de un emplazamiento y una notificación conforme al debido proceso de ley. Añadió que ese tribunal tampoco tenía jurisdicción para atender el asunto.

Tras evaluar la prueba desfilada durante el juicio, el foro primario notificó una sentencia el 18 de agosto de 2020. En las determinaciones de hechos detalló que previo al traslado de la señora Díaz Lebrón a Puerto Rico el **15 de mayo de 2019,** las partes y los menores residieron en el estado de Florida por 17 meses. La señora Díaz Lebrón testificó que en dos ocasiones su tía, a solicitud de ella, informó a la policía que ocurrió violencia doméstica para que la removieran junto con los menores de la vivienda que compartía con el señor Colón Vega. Cabe destacar que en esos momentos no se radicaron cargos ni órdenes de protección. De hecho, la señora Díaz Lebrón aceptó que en esas ocasiones no hubo acto de violencia física o altercado de violencia doméstica alguno.

A su vez, el foro primario consignó que luego de esos incidentes, la señora Díaz Lebrón residió con los menores en la casa de su tía en: 3260 Avenue Q, N.W., Winter Haven, Polk County, FL 33881. Posteriormente, el señor Colón Vega radicó una petición de determinación de paternidad ante el tribunal de Florida. El 29 de abril de 2019 se emplazó personalmente

a la señora Díaz Lebrón en la casa de su tía -donde residía- con copia de: **la demanda, el emplazamiento**, *Amended motion for temporary retell*, *Motion for temporary relief*, *Notice in paternity action*, *Notice of related cases*, *Notice of appearance of cocounselors*, y ***Designation of email addresses pursuant to rule 2.516***.

Por otro lado, la señora Díaz Lebrón testificó que a pesar de que se trasladó a Puerto Rico continuó recibiendo todas las notificaciones del tribunal de Florida en la dirección donde se le emplazó. Sin embargo, su tía le informó que devolvió la correspondencia como "*unclaimed*". Reconoció que no avisó al tribunal de Florida el cambio de dirección.

Tras varios incidentes, el 5 de septiembre de 2019, durante el juicio en Florida, el señor Colón Vega proveyó a ese tribunal la dirección de Puerto Rico que sospechaba pertenecía a la señora Díaz Lebrón, pues recibió una carta de la Administración para el Sustento de Menores (ASUME) en junio de 2019. Nótese que todas las notificaciones, así como la sentencia, se notificaron a la última dirección conocida de la señora Díaz Lebrón, donde se le emplazó personalmente.

Asimismo, nuestro foro de instancia entendió que la señora Díaz Lebrón solicitó unas órdenes de protección en Puerto Rico cuando el señor Colón Vega le informó, aproximadamente el 20 de septiembre de 2019, que obtuvo una sentencia a su favor y que tenía la intención de recoger a los menores. Esta indicó que su temor era que el señor Colón

Vega le quitara a sus hijos. Ambas órdenes fueron denegadas y desestimadas posteriormente.

A pesar de que la señora Díaz Lebrón alegó que desconocía del proceso en Florida, el foro primario distinguió:

> La demandada testificó que no dominaba el idioma inglés y que no tenía "idea" de los documentos que había recibido personalmente el 29 de abril del 2019. **Sin embargo, reconoció que probablemente se trataba de una demanda en su contra, reconoció su nombre y el del señor Colón Vega, reconoció que se trataba de unos documentos del Tribunal de la Florida y determinó no contratar o consultar los servicios de un abogado porque no lo estimó necesario.** (Negrilla suplida). Ap. Sol. Cert., pág 5.

También, indicó que le parecía curioso que la señora Díaz Lebrón reconoció un documento firmado por ella en el que, **luego de emitida la sentencia**, informó (en español e **inglés**) al tribunal de Florida su nueva dirección postal.

Con este panorama, el Tribunal de Primera Instancia otorgó entera fe y crédito a la sentencia del tribunal de Florida que concedió la custodia de los menores al señor Colón Vega.[1] Específicamente, determinó que no tenía jurisdicción para revisar en sus méritos la sentencia dictada válidamente por ese otro tribunal. Coligió que la señora Díaz Lebrón tuvo la oportunidad de comparecer ante el tribunal de

---

[1] Cabe destacar que el foro primario dejó en suspenso una orden de arresto (*Writ of bodily attachment*) y una orden de recogido (*Pick-up order*), ambas emitidas por el tribunal de Florida, sujeto a que la señora Díaz Lebrón entregara los menores al señor Colón Vega.

Florida para presentar evidencia a su favor, pero se cruzó de brazos.

En desacuerdo, la señora Díaz Lebrón instó un recurso de apelación ante el Tribunal de Apelaciones. En lo pertinente, argumentó que el foro primario erró al no reconocer que hubo fraude en la información sometida al tribunal de Florida, y que se violentó el debido proceso de ley. El señor Colón Vega se opuso. Entonces, el foro apelativo intermedio revocó el dictamen del Tribunal de Primera Instancia. Determinó que, si bien el tribunal de Florida adquirió jurisdicción sobre la señora Díaz Lebrón, no se demostró que cumplió con la obligación de notificar adecuadamente. Razonó que el tribunal debió realizar esfuerzos razonables para notificar una nueva audiencia tras conocer que la señora Díaz Lebrón tenía otra dirección en Puerto Rico. El señor Colón Vega solicitó reconsideración, pero fue denegada.

Insatisfecho, el señor Colón Vega instó una petición de certiorari ante nos. Señaló que el foro apelativo intermedio erró al concluir que el tribunal de Florida no realizó esfuerzos razonables para notificar a la señora Díaz Lebrón. Arguyó que a esta se le: emplazó personalmente; notificó a la última dirección conocida, y anotó la rebeldía por incomparecencia. Manifestó que, a pesar de ello, la señora Díaz Lebrón no notificó su nueva dirección sino hasta después de que se dictó la sentencia.

Por el contrario, la señora Díaz Lebrón insistió en que el tribunal de Florida no siguió el debido proceso de ley, puesto que no recibió notificaciones del proceso judicial. También, reiteró que la sentencia se sustentó en alegaciones fraudulentas y falsas.

Expedido el recurso y con el beneficio de la comparecencia de las partes procedemos a resolver.

II

A. *Parental Kidnapping Prevention Act* y conflicto jurisdiccional

El *Parental Kidnapping Prevention Act* (PKPA), 28 USCA sec. 1738A(a), estatuto federal, procura facilitar la ejecución de los decretos judiciales estatales relacionados a custodia y derechos de visita, así como prevenir la competencia y el conflicto interjurisdiccional. Cancel Rivera v. González Ruiz, 200 DPR 319, 330 (2018). Como corolario, los tribunales de los estados están obligados a dar entera fe y crédito a los dictámenes de custodia que emiten sus equivalentes. 28 USCA sec. 1738A(a). Así, como norma general los tribunales no pueden modificar un dictamen de custodia que emitió otro estado de forma compatible con la ley. Íd. Véase, además, Collazo Dragoni v. Noceda González, 198 DPR 476, 483 (2017). Para auscultar si un decreto de custodia es válido primero se evalúa el requisito de residencia. 28 USCA sec. 1738A(c); Collazo Dragoni v. Noceda González, supra, pág. 484. El estado de residencia del menor es aquel en el que residió "por seis meses

consecutivos antes de la fecha en que comenzaron los procedimientos de custodia". (Traducción nuestra). 28 USCA sec. 1738A(b)(4).

Por otro lado, esta ley recalca que antes de que se haga una determinación de custodia, se debe proveer a los padres una notificación razonable y la oportunidad de ser escuchados. 28 USCA sec. 1738A(e). Si bien los preceptos de la *Parental Kidnapping Prevention Act* pueden ser ilustrativos, debe quedar claro que sus disposiciones aplican ante un conflicto jurisdiccional en el que se solicita la modificación del decreto de custodia que emitió otro estado. Collazo Dragoni v. Noceda González, supra, pág. 490. Además, el *Parental Kidnapping Prevention Act* prevalece sobre cualquier legislación estatal debido a que ocupa el campo respecto a los decretos de custodia interestatales. 28 USCA sec. 1738A(b)(8); Cancel Rivera v. González Ruiz, supra, pág. 330.

Con esto en mente, debemos comenzar identificando que en el momento en que se instó el pleito de custodia, Florida era el estado de residencia de los menores y las partes. Por eso, ese tribunal correctamente dispuso que tenía jurisdicción continua para determinar las relaciones paternofiliales. A la par, expresamente se reservó jurisdicción en el asunto.

Nótese que la señora Díaz Lebrón no inició un procedimiento en Puerto Rico para dirimir las cuestiones referentes a la custodia de los menores, ni solicitó que se

modificara el decreto original. Esta, en realidad, se opuso a la convalidación de la sentencia de Florida y alegó que los menores y ella se encontraban bajo la jurisdicción de Puerto Rico. Si bien aquí hay una acción que involucra un decreto de custodia, inicialmente se trata de un procedimiento de exequátur. En la medida en que se valide un decreto de custodia de otro estado, mientras no se solicite una modificación no yace un conflicto jurisdiccional. A tono con esto, pasamos a examinar la controversia que estriba en si corresponde convalidar la determinación de custodia que hizo el tribunal de Florida.

B. Exequátur para sentencias de un estado de Estados Unidos

En nuestro ordenamiento jurídico las sentencias y órdenes dictadas por los tribunales de un estado de la Unión o país extranjero no operan en forma directa o *ex proprio vigore*. Rodríguez Contreras v. E.L.A., 183 DPR 505, 516 (2011). Antes de que estas sentencias se puedan ejecutar o en alguna otra forma hacer efectivas, corresponde que nuestros tribunales locales las reconozcan y validen mediante el procedimiento de exequátur. Gulf Petroleum *et al*. v. Camioneros, 199 DPR 962, 966 (2018); Mench v. Mangual, 161 DPR 851, 856 (2004). Véase, además, Regla 55.1 de Procedimiento Civil, 32 LPRA Ap. V. Por otro lado, en la situación particular en que se podrían ver afectados los intereses de menores, es necesario notificar al Procurador de Asuntos de Familia. Regla 55.4 de Procedimiento Civil, supra.

Conforme hemos expresado, en el contexto específico de sentencias dictadas por los tribunales estatales de Estados Unidos el proceso es más sencillo, pues sirve para cumplir con las disposiciones de la Cláusula de entera fe y crédito, Art. IV, Sec. 1, Const. EE. UU., LPRA, Tomo 1. Véanse, además, Gulf Petroleum *et al*. v. Camioneros, supra, pág. 968; Toro Avilés v. P.R. Telephone Co., 177 DPR 369, 376 (2009). En esas circunstancias, luego de resolver planteamientos procesales, el tribunal deberá comprobar que un foro con jurisdicción dictó la sentencia, mediante el debido proceso de ley, y que esta no se obtuvo por fraude. Regla 55.5 de Procedimiento Civil, supra.

Si estas exigencias se cumplen, "los tribunales de Puerto Rico tendrán que concederles entera fe y crédito a las sentencias dictadas en jurisdicciones estatales de los Estados Unidos **independientemente de lo que sean la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate**…". (Negrilla suplida y escolios omitidos). Informe de Reglas de Procedimiento Civil, diciembre 2007, Vol. I, pág. 638. Véase, además, Márquez Estrella, *Ex parte*, 128 DPR 243, 255 (1991). Entiéndase que, cumplimentados los requisitos del exequátur, los tribunales locales están impedidos de cuestionar sustantivamente las sentencias que provienen de un estado, territorio o posesión de Estados Unidos. Rodríguez Contreras v. E.L.A., supra. En ese esquema, el ámbito de revisión del tribunal local no da cabida a que las partes relitiguen en sus méritos una

controversia que ya fue adjudicada por otro tribunal. Toro Avilés v. P.R. Telephone Co., supra, pág. 405. Tanto es así, que la parte promovida no derrota una petición de exequátur descansando simplemente en aseveraciones generales, sin presentar prueba alguna. Mench v. Mangual, supra, págs. 862-863.

Como vimos, el primer requisito para convalidar una sentencia de otra jurisdicción es que el tribunal emisor tuviera jurisdicción. Hemos expresado que la jurisdicción sobre la persona se adquiere por medio del emplazamiento. Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1005 (2021); Pérez Quiles v. Santiago Cintrón, 206 DPR 379, 384 (2021); Rivera Marrero v. Santiago Martínez, 203 DPR 462, 480 (2019). Este tiene el propósito de notificar a la parte demandada la reclamación en su contra a fin de que quede obligada por el dictamen que en su día se dicte y de que, **si así lo desea**, ejerza su derecho a comparecer. Torres Zayas v. Montano Gómez et als., 199 DPR 458, 467 (2017). Cabe destacar que una vez la persona fue emplazada correctamente, el que "nunca utilice los procedimientos y recursos judiciales disponibles, no invalida el hecho de que la parte fue advertida correctamente". Yumac Home v. Empresas Massó, 194 DPR 96, 113 (2015).

A grandes rasgos, las reglas procesales de Florida atinentes a emplazamientos son similares a nuestra Regla 4 de Procedimiento Civil, supra. Véase, Florida Statute sec. 48.031; Fla. R. Civ. P. Rule 1.070. Por ejemplo, el

diligenciamiento del emplazamiento personal se hace con copia de la demanda. Fla. R. Civ. P. Rule 1.070(e); Fla. Fam. L.R.P. Rule 12.071.

Estrechamente relacionada con lo anterior, la segunda exigencia por examinar en el exequátur es el cumplimiento de un debido proceso de ley. La notificación adecuada, como uno de sus componentes básicos, brinda a la parte la oportunidad de escoger si ejerce o no los remedios que le concede la ley. Además le advierte la acción que pende en su contra. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 839 (2021); Com. Elect. PPD v. CEE _et al._, 205 DPR 724, 744 (2020); Torres Alvarado v. Madera Atiles, 202 DPR 495, 503 (2019). En esa línea, enviar las notificaciones del tribunal a la última dirección consignada en el expediente es un mecanismo eficaz, adecuado, razonablemente calculado y justo que cumple con el debido proceso de ley. Yumac Home v. Empresas Massó_,_ supra, pág. 114; Banco Popular v. S.L.G. Negrón, 164 DPR 855 (2005). Es decir, la última dirección que aparece en el expediente es una razonablemente calculada, con arreglo a las particularidades de las circunstancias, a la que se puede cursar una notificación de modo que se salvaguarde el debido proceso de ley. Véase, Rivera v. Jaume, 157 DPR 562, 579 (2002); Rodríguez v. Nasrallah, 118 DPR 93, 102 (1986). Después de todo, si el demandado tuvo la oportunidad de ser oído ante un tribunal competente y con jurisdicción, pero no se valió de ella, asumió las consecuencias y procederá el exequátur si se cumplen las otras condiciones. J. A. Cuevas

Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2011, T. V, pág. 1573.

En lo pertinente, la Regla 2.516(b)(2) de Florida Rules of General Practice and Judicial Administration, dispone: "Service on and by all parties who are not represented by an attorney and who do not designate an e-mail address […] must be made by delivering a copy of the document or by mailing it to the party […] at their last known address […] **Service by mail is complete upon mailing**". Véase, además, Fla. R. Civ. P. Rule 1.080; Fla. Fam. L.R.P. Rule 12.080(c). Además, el Formulario 12.915 de *Designation of current Mailing and e-mail Address*, documento que se entrega al emplazar, contiene instrucciones específicas en cuanto a la designación de la dirección de una parte. Este claramente impone a cada parte el deber de notificar su propia dirección o cambios en ella.

Ahora bien, hemos expresado que "cuando una agencia administrativa **tiene información que le permita conocer que sus intentos de notificar a la parte interesada han sido inútiles**, entonces debe hacer los esfuerzos adicionales razonables como se esperaría de una agencia realmente deseosa de informar a las partes afectadas por una decisión adversa". (Negrilla suplida). Sánchez Rivera v. Herbert J. Sims & Co., 2022 TSPR 20, 208 DPR __ (2022). En el contexto administrativo es necesario analizar la razón por la que el servicio postal devuelve una notificación. Román Ortiz v. OGPe, 203 DPR 947, 963 (2020). Hay una distinción importante

entre una notificación devuelta porque el destinatario la rechaza deliberadamente, a pesar de que se puso a su alcance (*refused*), y aquella que no se reclama (*unclaimed*). Román Ortiz v. OGPe, supra, pág. 959; Rivera v. Jaume, supra, págs. 581-582. Claro está, cuando la dirección de envío es desconocida o se pone en duda, se utiliza el criterio de la dirección razonablemente calculada para examinar si esta fue adecuada a la luz de la información conocida por el remitente. Román Ortiz v. OGPe, supra.

Por último, en el proceso de exequátur se ausculta que la sentencia no se obtuviera por fraude. Recordemos que, toda aseveración de fraude debe detallar las circunstancias que lo constituyen. Regla 7.2 de Procedimiento Civil, supra. Es más, "es necesario probarla y quien la haga frívolamente se expone a incurrir en responsabilidad". Informe de Reglas de Procedimiento Civil, supra, pág. 644. En efecto, el fraude nunca se presume, sino que se prueba con certeza razonable, esto es, con preponderancia de la evidencia. Pardo v. Sucn. Stella, 145 DPR 816, 825 (1998); García López v. Méndez García, 102 DPR 383, 386 (1974).

De hecho, tanto nuestras reglas procesales como las de Florida permiten que se solicite el relevo de una sentencia por motivo de fraude. Regla 49.2 de Procedimiento Civil, supra; Fla. R. Civ. P. Rule 1.540(b); Fla. Fam. L.R.P. Rule 12.540(b). A modo de ejemplo y en el contexto del relevo de una sentencia, en Puerto Rico, constituye fraude aquel perpetrado por oficiales del tribunal; la preparación, el

uso y presentación de prueba falsa obtenida por soborno; la instigación al perjurio, o que no se emplace debidamente a una parte. Pardo v. Sucn. Stella, supra, pág. 829; Municipio de Coamo v. Tribunal Superior, 99 DPR 932, 939-940 (1971); G. A. C. Fin. Corp. v. Rodríguez, 102 DPR 213, 216 (1974). Sin embargo, las alegaciones falsas en la demanda no constituyen *per se* fundamentos para concluir que hubo fraude. Pardo v. Sucn. Stella, supra, pág. 825; Rodríguez v. Tribunal Superior, 102 DPR 290, 292 (1974). El que una parte mienta bajo juramento u omita informar que había otra acción de divorcio pendiente tampoco compone fraude que acarree el relevo de una sentencia. Municipio de Coamo v. Tribunal Superior, supra; Jiménez Merced v. Tribunal Superior, 100 DPR 750, 753 (1972).

## III

Recapitulando: La controversia ante nos estriba en si la sentencia emitida por el tribunal de Florida debe ser convalidada en Puerto Rico. Contestar esta interrogante requiere que examinemos tres factores: 1) la jurisdicción del tribunal de Florida; 2) el cumplimiento del debido proceso de ley, y 3) la presencia de fraude. Recordemos que el tribunal local no puede cuestionar la sustancia de la sentencia si se cumplen los parámetros del exequátur. En ese escenario, no se pueden relitigar asuntos adjudicados o invocar defensas que debían presentarse ante el tribunal que dictó la sentencia que se busca convalidar.

Aquí, el Tribunal de Apelaciones determinó que el tribunal de Florida adquirió jurisdicción sobre la señora Díaz Lebrón, ya que esta fue emplazada personalmente y tanto ella como los menores eran residentes de ese estado al momento en que se presentó la demanda. Sin embargo, razonó que el expediente carecía de información que permitiera corroborar que se le notificó adecuadamente durante el proceso. Aunque reconoció que la señora Díaz Lebrón tenía la responsabilidad de notificar su dirección actualizada al tribunal de Florida, coligió que una vez ese foro advino en conocimiento de un posible cambio —por medio del señor Colón Vega— debió hacer esfuerzos razonables para notificar nuevamente. Concluyó que no se podía determinar diáfanamente que se resguardó el derecho a un debido proceso de ley de la señora Díaz Lebrón. Por eso, sin adentrarse en el señalamiento de fraude, revocó la determinación del Tribunal de Primera Instancia que le confirió entera fe y crédito a la sentencia de Florida.

Por otro lado, ante nos el señor Colón Vega enfatizó que todo el proceso se notificó a la señora Díaz Lebrón a su última dirección conocida, pero esta instruía a su tía a que devolviera la correspondencia. Sostuvo que la señora Díaz Lebrón decidió no participar del proceso judicial en Florida, por lo que se le anotó la rebeldía. A su vez, planteó que esta tenía la obligación de notificar su propia dirección al tribunal de Florida. A su entender, la conducta deliberada y autoinfligida de la señora Díaz Lebrón al no aceptar la

correspondencia no equivale a que la notificación fue defectuosa.

En contraposición, la señora Díaz Lebrón insistió en que la sentencia de Florida se obtuvo mediante fraude porque el señor Colón Vega omitió informar los actos de violencia doméstica que supuestamente cometió y mintió al alegar que los menores no estaban recibiendo tratamiento médico. Añadió que no hay prueba de que se le notificaron las citaciones del proceso judicial en Florida.

Primero, en este caso indiscutiblemente el tribunal de Florida adquirió jurisdicción sobre la señora Díaz Lebrón cuando se le emplazó personalmente. Asimismo, según el *Parental Kidnapping Prevention Act*, Florida era el estado de residencia de los menores y las partes cuando se presentó la acción de custodia y durante los 6 meses anteriores a ello. A tales efectos, el tribunal de Florida tenía jurisdicción para dictar la sentencia. Por ende, se cumplió con el primer requisito del exequátur.

Ahora, al referirnos al asunto del debido proceso de ley, igualmente colegimos que se efectuó el requisito de una notificación adecuada. La señora Díaz Lebrón admitió que no compareció ante el tribunal de Florida a pesar de que fue emplazada personalmente y conocía que había una acción en su contra. No nos convence su alegación de que "no tenía idea" del contenido de los documentos que recibió porque no entendía el idioma inglés. Tal como intimó el foro primario, esta reconoció que probablemente se trataba de una demanda

en su contra, identificó el nombre de las partes, y que eran documentos del tribunal de Florida, pero decidió no buscar asistencia legal ni acudir a ese foro. A esto se suma que, curiosamente, envió una carta en **inglés** y español al tribunal de Florida, —luego de que se emitió la sentencia— en la que notificó su dirección en Puerto Rico. De la transcripción estipulada surge que la señora Díaz Lebrón aceptó que notificó a dicho foro su dirección en Puerto Rico porque su tía dejó de recibir las cartas.

En ese sentido, según sus propias admisiones no cabe hablar de que la señora Díaz Lebrón desconocía el proceso. Por el contrario, deliberadamente se cruzó de brazos. Todas las notificaciones se cursaron a su última dirección conocida, donde se le emplazó personalmente. No podía ser de otro modo, puesto que esa era la única dirección razonablemente calculada. Tanto es así, que ella admitió que pese a que tenía conocimiento de las notificaciones, voluntariamente decidió no participar en el proceso judicial de Florida. Incluso, el tribunal de Florida acertadamente dispuso: "The Court finds that the Mother has had knowledge of these proceedings and has voluntarily chosen not to participate in them. The Mother has received adequate legal notice of the action at issue. The Mother has filed no response in this action whatsoever". Ap. Sol. Cert., pág . 12.

Aun dando por cierto que el señor Colón Vega le comunicó al tribunal de Florida que sospechaba que la señora Díaz

Lebrón se encontraba en Puerto Rico, no es menos cierto que la dirección de Florida era la última dirección conocida con certeza razonable. Además, esto no relevó a la señora Díaz Lebrón de la responsabilidad de informar su dirección. Ella tenía el deber procesal de notificar un cambio en su dirección. En consecuencia, toda vez que el tribunal de Florida hizo esfuerzos razonables de enviar las notificaciones a la última dirección conocida —donde en efecto se recibieron, pero fueron devueltas intencionalmente— es forzoso ultimar que la sentencia de ese foro observó el debido proceso de ley. No hay prueba que nos lleve a determinar lo contrario. Al mismo tiempo, se cumplió con la exigencia de la *Parental Kidnapping Prevention Act* de brindar a las partes una notificación razonable y la oportunidad de ser oídas.

Por último, el expediente no demuestra que hubo fraude en la obtención de la sentencia de Florida. Las meras alegaciones de la señora Díaz Lebrón concernientes a que el señor Colón Vega le mintió al tribunal de Florida no denotan fraude *per se*, ni son suficientes para concluir que estos asuntos fueron esenciales en la determinación del tribunal.

Aun así, la señora Díaz Lebrón insistió en que se cometió fraude porque el señor Colón Vega no informó que se comunicó con ella ni admitió la alegada violencia doméstica. No obstante, **la señora Díaz Lebrón tuvo la oportunidad de presentar todas sus defensas ante el tribunal de Florida, pero declinó hacerlo.** Según lo expuesto, no encontramos

probado que la determinación del tribunal de Florida esté sustentada en fraude.

Enfatizamos que la mera alegación de fraude no es suficiente para evitar que se convalide una sentencia de otra jurisdicción. Las pautas de nuestro ordenamiento jurídico requieren que el fraude se pruebe por preponderancia de la evidencia. Si durante el procedimiento de exequátur no se demuestra con certeza razonable que la sentencia a convalidarse está viciada por fraude, procederá otorgarle entera fe y crédito, si se cumplen los demás requisitos para ello. Claro está, esto se tendrá en cuenta observando, principalmente, el ordenamiento jurídico del tribunal que emitió la sentencia.

Aclaramos que alegar fraude como oposición al exequátur no subsana la omisión de utilizar los mecanismos procesales disponibles en la jurisdicción foránea. Tampoco es una alternativa para relitigar el caso en sus méritos. En otras palabras, la Regla 55.5 de Procedimiento Civil, supra, no da espacio a que se alegue fraude como subterfugio para revisar las determinaciones del foro de otra jurisdicción o presentar evidencia que debió presentarse en el procedimiento original. Los tribunales no deben desvirtuar la naturaleza del proceso. Así, el fraude que impide la convalidación es solo aquel que vicia la sentencia de tal modo que rebasa los preceptos de entera fe y crédito.

En fin, concluimos que procede concederle entera fe y crédito a la sentencia del tribunal de Florida. Ese foro

tenía jurisdicción, observó el debido proceso de ley y la sentencia no se obtuvo por fraude. Además, el dictamen del tribunal de Florida cumplió con los parámetros de la *Parental Kidnapping Prevention Act*, y la ley del estado de residencia. Por ende, no estamos en posición de modificarlo. En la medida en que se cumplieron los requisitos procesales del exequátur, estamos impedidos de cuestionar sustantivamente la sentencia del tribunal del estado de Florida. En ese escenario, nuestro ámbito de revisión no da espacio a que las partes relitiguen los méritos de una controversia adjudicada.

IV

Por los fundamentos expuestos, se revoca la sentencia del Tribunal de Apelaciones. Por consiguiente, se reinstala la decisión del Tribunal de Primera Instancia que le confirió entera fe y crédito a la sentencia del tribunal del estado de Florida.

Se dictará Sentencia en conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael W. Colón Vega

    Peticionario

      v.
                         CC-2022-0257

Iris V. Díaz Lebrón

    Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 14 de marzo de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones. Por consiguiente, se reinstala la decisión del Tribunal de Primera Instancia que le confirió entera fe y crédito a la sentencia del tribunal del estado de Florida.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disintió con opinión escrita. El Juez Asociado señor Colón Pérez disintió y hace constar las expresiones siguientes:

> Por considerar que estamos ante una *Sentencia* emitida por un tribunal de un estado de los Estados Unidos, entiéndase el estado de Florida, en la que no se observaron las garantías mínimas del debido proceso de ley que le asisten a la parte aquí recurrida, la Sra. Iris V. Díaz Lebrón, (particularmente, en lo referente a la notificación adecuada de las decisiones tomadas por el referido foro

judicial); lo que, a todas luces, impide que dicho documento pueda ser convalidado -- mediante el procedimiento de exequátur -- por los tribunales del Estado Libre Asociado de Puerto Rico, respetuosamente disentimos del curso de acción seguido en el día de hoy por una mayoría de este Tribunal. Véase, Regla 55 de Procedimiento Civil, 32 LPRA Ap. V, R. 55 y su jurisprudencia interpretativa, *Toro Avilés v. Telephone Co.*, 177 DPR 369 (2009); *Mench v. Mangual*, 161 DPR 851 (2004); *Márquez Estrella, Ex Parte*, 128 DPR 243 (1991*); Ef. Litográficos v. Nat. Paper & Type Co.*, 112 DPR 389 (1982).".

El Juez Asociado señor Estrella Martínez disintió sin opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael W. Colón Vega

    Peticionario

        v.                     CC-2022-0257

Iris V. Rivera Lebrón

    Recurrida

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente

En San Juan, Puerto Rico, a 14 de marzo de 2023.

Una mayoría de este Tribunal emitió hoy una determinación que, no solamente se abstrae de los hechos, sino que, lamentablemente ignora que la controversia está enmarcada dentro de un contexto de violencia doméstica y revictimización a través del uso de procesos judiciales. Al analizar si procedía convalidar en Puerto Rico una Sentencia emitida por un tribunal del Estado de la Florida, mis compañeros y compañera de estrado se enfocaron mecánicamente en si medió el debido proceso de ley con relación al envío de notificaciones del tribunal. Desafortunadamente, en ese ejercicio realizaron un análisis sin tomar en cuenta las particularidades de la situación fáctica ante nos.

Peor aún, una mayoría de este Tribunal condona una violación al debido proceso de ley por parte de otro tribunal, al concluir que aun luego de que el tribunal de Florida adviniese en conocimiento de la dirección nueva de la Sra. Iris V. Díaz Lebrón (señora Díaz Lebrón) en Puerto Rico, esta no constituye la última dirección conocida con certeza razonable. Se relevó, sin más, al tribunal estatal de velar por el debido proceso de ley y se convalidó una sentencia que se dicta sin que ese tribunal hiciera esfuerzo alguno, mucho menos esfuerzos razonables, de enviar las notificaciones a la última dirección conocida de la señora Díaz Lebrón. Con estos lineamientos en mente, no puedo avalar el curso de acción que emprendió esta Curia para disponer de la controversia. Por ello, disiento.

I

Entiendo prudente enfatizar ciertos eventos que arrojan luz al hecho de que la sentencia que hoy se convalida es una extensión del patrón de violencia doméstica y de género al cual el Sr. Michael W. Colón Vega (señor Colón Vega) ha sometido a la señora Díaz Lebrón.

La señora Díaz Lebrón y el señor Colón Vega son los progenitores de los menores J.A.C., nacido el 5 de noviembre de 2015 en Puerto Rico, y G.A.C., nacida el 2 de agosto de 2018 en el estado de Florida. Del testimonio de las partes surge que luego del paso del Huracán María, el señor Colón Vega se mudó con la menor J.A.C. al estado de Florida. Esto, con permiso de la señora Díaz Lebrón, quien también se mudó

al estado de Florida en una fecha posterior. Ambos residieron en la vivienda de la madre del señor Colón Vega.

Estando allá, ocurrieron dos incidentes de violencia doméstica en los cuales la señora Díaz Lebrón, a través de su tía, la Sra. María Lebrón, contactó a la policía y obtuvo asistencia para refugiarse en la casa de esta. El primer incidente ocurrió el 22 de septiembre de 2018 y el segundo el 11 de febrero de 2019. Aunque en esas ocasiones no se sometieron cargos en contra del señor Colón Vega, la señora Díaz Lebrón relató que este la sometía a privación económica, aislamiento social, humillación verbal, **y la amenaza de quitarle a sus hijos.**

Luego de que la señora Díaz Lebrón se refugiara con su tía tras escapar del hogar en el cual era víctima de violencia doméstica, esta solicitó asistencia de alimentos ante el Departamento de Familia y Niños de la Florida. Posteriormente, la señora Díaz Lebrón comenzó el proceso para imponer una pensión alimentaria contra el señor Colón Vega. Ahora bien, este presentó una querella de maltrato contra la señora Díaz Lebrón, en la que alegó que los menores no recibían el tratamiento médico requerido. La querella resultó en una investigación por parte del Departamento de Familia y Niños de Florida que concluyó el 10 de julio de 2019, luego de que no se encontrara evidencia alguna de "medical neglect". Además, el señor Colón Vega instó un *Petition for determination of paternity* ante el tribunal de Florida. El 29 de abril de 2019 la señora Díaz Lebrón fue emplazada

personalmente en la dirección de su tía, donde residía en ese momento.

Más adelante, el 15 de mayo de 2019, la señora Díaz Lebrón se mudó nuevamente con ambas menores, esta vez a Puerto Rico. Surge del expediente que esta nunca le informó al Tribunal de Florida que se estaría trasladando a Puerto Rico ni proveyó una dirección actualizada. Por esto, el tribunal de Florida continuó enviando toda la correspondencia y notificaciones a la dirección de la tía de la señora Díaz Lebrón, ya que ahí fue donde se le emplazó personalmente. Sin embargo, la tía de la señora Díaz Lebrón, a petición de esta última, devolvía las cartas como "unclaimed" ya que la señora Díaz Lebrón no residía ahí, sino en Puerto Rico.

Al llegar a Puerto Rico, la Sra. Díaz Lebrón solicitó y obtuvo los servicios del TANF, WIC, asistencia médica para los menores, entre otras ayudas gubernamentales. Además, realizó gestiones para la apertura de un caso ante la ASUMe, caso número 0587735. Sobre esto, **el señor Colón Vega recibió una carta de ASUMe en junio de 2019 en la cual se detalló una dirección de la señora Díaz Lebrón en Puerto Rico.**

A pesar de advenir en conocimiento de la nueva dirección en Puerto Rico de la señora Díaz Lebrón, **el señor Colón Vega ocultó esta información al tribunal de Florida y permitió que se continuaran enviando las notificaciones correspondientes a una dirección que él sabía que ya no era la correcta.** Estas notificaciones incluyeron una orden para mediación, una comunicación sobre el *Florida Parent*

*Educaction and Family Stabilization Course* y la citación para la vista final celebrada el 5 de septiembre de 2019.[1]

**No fue hasta el 5 de septiembre de 2019, día de la vista final, que el señor Colón Vega le divulgó por primera vez al tribunal que conocía la dirección nueva de la señora Díaz Lebrón.** El tribunal de Florida, a pesar de conocer que llevaba meses enviando todas las notificaciones —que fueron devueltas como "unclaimed"— a una dirección en la cual ya no residía la parte, procedió a emitir un *Final Judgement of Paternity* otorgándole la custodia de los menores al señor Colón Vega. Resulta curioso que, a pesar de enterarse de la dirección nueva de la señora Díaz Lebrón a través del señor Colón Vega y de plasmar en la Sentencia que "the Mother absconded with the minor children to Puerto Rico", **el tribunal decidió emitir su decisión final sin primero tan siquiera hacer esfuerzos razonables para corroborar la información que se le proveyó sobre la dirección nueva. Además, tampoco notificó esta Sentencia a la dirección en Puerto Rico, sino que volvió a notificarla a la dirección de la tía de la señora Díaz Lebrón.**

Luego, el 12 de septiembre de 2019, el señor Colón Vega presentó nuevamente otra querella de maltrato de menores en contra de la señora Díaz Lebrón; esta vez, ante el Departamento de la Familia de Puerto Rico. Dicha querella

---

[1] Nótese que, a pesar de tener conocimiento de la dirección en Puerto Rico de la señora Díaz Lebrón, y consecuentemente de que la dirección a la cual se le estaban enviando las referidas comunicaciones ya no era la correcta, el señor Colón Vega ocultó dicha información del tribunal de Florida por meses.

fue desestimada, luego de que se concluyera, tras la investigación correspondiente, que esta carecía de fundamentos. Es importante aclarar que esta querella se presentó antes de que la señora Díaz Lebrón supiera de la Sentencia emitida por el tribunal de Florida. **Por esto, viéndose amenazada de perder sus hijos, la Sra. Díaz Lebrón obtuvo asistencia del Programa a víctimas de violencia doméstica en la Casa Protegida Julia de Burgos, donde pernoctó por tres noches.**

Ulteriormente, el 19 de septiembre de 2019 el Sr. Colón Vega presentó ante el Tribunal de Primera Instancia una petición de exequátur, en la que solicitó que se convalidara y ejecutara la Sentencia emitida por el tribunal de Florida. Tras los trámites de rigor, el foro primario otorgó entera fe y crédito al referido dictamen. En particular, concluyó que la señora Díaz Lebrón tuvo la oportunidad de comparecer ante el tribunal de Florida para presentar evidencia a su favor, pero no lo hizo.

Inconforme, la señora Díaz Lebrón interpuso un recurso de apelación ante el Tribunal de Apelaciones. El foro apelativo revocó el dictamen del Tribunal de Primera Instancia tras concluir que cuando el tribunal de Florida advino en conocimiento de que la señora Díaz Lebrón residía en Puerto Rico, debió, como esfuerzo razonable, notificar los procedimientos a la nueva dirección conocida. **Esto, con el propósito de salvaguardar a la señora Díaz Lebrón su derecho a comparecer y ser escuchada, para que mediase el**

**debido proceso de ley.** El foro apelativo razonó que, si bien era responsabilidad de la señora Díaz Lebrón notificarle al tribunal de Florida su dirección actualizada, el señor Colón Vega conocía que ella tenía una dirección distinta a la cual se estaba notificando y decidió guardar silencio sobre un hecho tan medular. Además, concluyó que el foro de la Florida, al ser notificado el día de la vista que la señora Díaz Lebrón tenía otra dirección en Puerto Rico, debió realizar esfuerzos razonables para notificar una nueva audiencia a esa dirección, particularmente cuando se trataba de un asunto tan sensitivo como lo era la custodia de menores.

En desacuerdo, el Sr. Colón Vega instó una petición de *certiorari* ante nos.

II

Como correctamente se expone en la Opinión mayoritaria, uno de los requisitos para la convalidación de una sentencia en Puerto Rico mediante el proceso de exequátur es que el tribunal que la emitió haya observado el debido proceso de ley. Regla 55.5, Reglas de Procedimiento Civil, 32 LPRA Ap. V.

A tono con ello, conviene mencionar que el derecho fundamental a un debido proceso de ley se reconoce tanto en la Constitución de Puerto Rico como en la Constitución federal. Const. EE. UU., Emdas V y XIV LPRA, Tomo 1; Const. P.R. Art. II, Sec. 7. Además, este Tribunal ha explicado que el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías

que ofrece la ley, tanto en el ámbito judicial como en el administrativo". Aut. Puertos v. HEO, 186 DPR 417, 428 (2012) *citando a* Marrero Caratini v. Rodríguez Rodríguez, 138 DPR 215, 220 (1995). Esta garantía de velar por el debido proceso de ley tiene como propósito imponer al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. Álvarez v. Arias, 156 DPR 352, 364 (2003); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 887 (1993).

Sobre esto, este Tribunal ha expresado que el debido proceso de ley exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, a saber: **(1) notificación adecuada de la reclamación presentada**; (2) proceso ante un juzgador imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se fundamente en el expediente. Íd., pág. 365; Hernández González v. Srio. de Transportación y Obras Públicas, 164 DPR 390 (2005). **La notificación adecuada constituye un requisito fundamental del debido proceso de ley, el cual es requerido a lo largo de todo el proceso judicial. Por ello, la garantía constitucional requiere que el tribunal notifique toda orden, resolución o sentencia que emita**. Medio Mundo, Inc. v. Rivera, 154 DPR 315 (2001); Martínez, Inc. v. Abijoe Realty Corp., 151 DPR 1 (2000). **Si no se cumple con el trámite de notificación**

**adecuada, la sentencia que se dicte no surtirá efecto ni podrá ser ejecutada.** <u>Falcón Padilla v. Maldonado Quirós</u>, 138 DPR 983 (1995); <u>Pueblo v. Hernández Maldonado</u>, 129 DPR 472 (1991).

El criterio que ha adoptado este Tribunal a los efectos de que se cumpla con el requisito de notificación, es que se envíe a una dirección que esté razonablemente calculada, dentro de las circunstancias particulares del caso. <u>Rivera Báez v. Jaume Andújar</u>, 157 DPR 562 (2002); <u>Rodríguez v. Nasrallah</u>, 118 DPR 93 (1986). En <u>Rodriguez v. Nasrallah</u>, 118 DPR 93 (1986), se aclaró que las gestiones que se lleven a cabo para localizar al demandado que se intenta emplazar deben efectuarse de buena fe.

De particular relevancia a la controversia ante nos, en <u>Rivera Báez v. Jaume Andújar</u>, supra, discutimos las implicaciones de que el servicio postal devuelva una notificación que no ha sido reclamada (*unclaimed*). Este Tribunal señaló que cuando la notificación se devuelve sin reclamarse no se satisfacen los requisitos de debido proceso de ley. En ese caso, este Tribunal expresó que el tribunal de instancia erró al dictar una sentencia en rebeldía, ignorando el hecho esencial de que la correspondencia enviada a la parte fue devuelta por el correo. Se enfatizó que el tribunal de instancia erró al proceder de esa manera a pesar de que tenía de frente evidencia que, como cuestión de realidad, sembraba dudas sobre si la dirección utilizada por la demandante para enviar la notificación de la demanda y

del emplazamiento efectivamente era la correcta. <u>Rivera v. Jaume</u>, supra.

De otra parte, recalco que en el caso ante nos, el requisito de notificación adecuada surge también del *Parental Kidnapping Prevention Act* (PKPA), 28 USCA sec. 1738A(a). El propósito primordial de este estatuto federal es facilitar la ejecución de los decretos de los estados sobre custodia de menores y derechos de visita, y prevenir la competencia y el conflicto interjurisdiccional. <u>Cancel Rivera v. González Ruiz</u>, 200 DPR 319 (2018). Sin embargo, esta ley dicta que un tribunal no puede hacer una determinación de custodia hasta tanto haya provisto notificación razonable y la oportunidad de ser escuchado a los padres del menor. 28 USCA sec. 1738A(e).

## III

Habiendo expuesto el derecho aplicable a la controversia ante nos, procedo a discutir por qué una mayoría de este Tribunal erró al revocar la Sentencia del Tribunal de Apelaciones y reinstalar la decisión del Tribunal de Primera instancia que le confirió entera fe y crédito a la Sentencia del tribunal de Florida.

En la opinión mayoritaria se argumenta que la dirección a la cual fueron enviadas todas las notificaciones del tribunal de Florida, es decir, la casa de la tía de la señora Díaz Lebrón, fue la última dirección conocida y razonablemente calculada. **Esta conclusión no encuentra apoyo en los hechos que surgen del expediente.**

No hay controversia sobre el hecho de que el señor Colón Vega se enteró, a través de una carta de ASUMe, de que la señora Díaz Lebrón se encontraba en Puerto Rico y tenía una dirección distinta a la cual se le estaban enviando las notificaciones en Florida. El señor Colón Vega se reservó esta información por aproximadamente tres meses antes de informárselo al tribunal de Florida. Si bien no existe una obligación expresa de informarle al tribunal el cambio de dirección de otra parte, ciertamente tener la referida información y permitir que el tribunal continúe enviando notificaciones a una dirección que le consta a la parte que es la incorrecta, **no constituye un acto de buena fe cónsono con la naturaleza del derecho al debido proceso de ley.**

A pesar de haberse reservado información tan esencial por tres meses, el señor Colón Vega finalmente le proveyó la información al tribunal de Florida el 5 de septiembre de 2019, antes de que el referido tribunal dictase una Sentencia en rebeldía. En ese momento el tribunal de Florida tenía suficiente información como para cuestionarse si estaba cumpliendo con el debido proceso de ley al enviar las notificaciones a la dirección del récord. Esto así, no solo porque el señor Colón Vega le informó sobre la dirección plasmada en la misiva de ASUMe, sino porque le constaba al tribunal de Florida que las notificaciones que había estado enviando a la dirección de Florida estaban siendo devueltas como "*unclaimed*". Resulta razonable que, ante esos dos hechos, el tribunal reconociera que la dirección en la cual

se emplazó a la señora Díaz Lebrón dejó de ser la última dirección conocida y razonablemente calculada. En ese momento, el tribunal de Florida debió haber pospuesto la vista final y ordenar a que se hicieran los esfuerzos razonables para notificar a la señora Díaz Lebrón en esta nueva dirección. **Solo así se hubiese cumplido con el requisito de notificación y el debido proceso de ley.**

La Opinión mayoritaria repite en varias ocasiones que la última dirección conocida de la señora Díaz Lebrón es la de su tía en Florida y no la suya en Puerto Rico, sin explicar por qué. Sin embargo, no hay duda de que el tribunal de Florida confió en la información provista por el señor Colón Vega y creyó que la señora Díaz Lebrón se encontraba en Puerto Rico, pues el *Pick Up Order* se efectuó para la dirección de Puerto Rico. **Entonces, ¿cómo podemos reconciliar el hecho de que por un lado el tribunal de Florida determinó que la señora Díaz Lebrón se llevó a los menores a Puerto Rico, pero por el otro lado insiste en que la última dirección conocida y razonablemente calculada es la de Florida?** La Opinión mayoritaria enfoca su argumento en que la responsabilidad de informar su dirección al tribunal era de la señora Díaz Lebrón —cosa que no hizo— pero ignora la realidad de que esta actuó de manera razonable en consideración de que es una víctima de violencia doméstica que intentaba huir de la situación abusiva en la cual se encontraba. Además, si bien es cierto que esa responsabilidad recaía en la señora Díaz Lebrón, **también es cierto que el**

**deber de los tribunales de velar por el debido proceso de ley y de emitir notificaciones adecuadamente no está supeditado a que sea una parte en particular quien le provea la información.** Es decir, simplemente no es relevante quién le trajo evidencia al tribunal sobre la nueva dirección de la señora Díaz Lebrón. Lo medular es que el tribunal advino en conocimiento de información que debió haber creado una duda razonable sobre la validez de las notificaciones que había emitido hasta ese momento. Ante esa realidad, independientemente de cómo se llegó a ese punto, se activó la responsabilidad del tribunal de llevar a cabo esfuerzos razonables y de buena fe para asegurarse que las notificaciones se enviasen a la dirección correcta. Evidentemente, el tribunal de Florida no cumplió con su deber y mucho menos con el debido proceso de ley.

IV

Mi disenso responde a que la Opinión del Tribunal ignora el simple hecho de que el tribunal de Florida supo de una dirección nueva de la señora Díaz Lebrón, mas dictó la Sentencia sin efectuar los esfuerzos razonables que aseguraran que las notificaciones se habían enviado a la dirección correcta como dicta el debido proceso de ley. Esto así, aunque sí utilizó la dirección correcta para efectuar el *Pick Up Order*.

El **análisis de este Tribunal prescinde del contexto que define este caso.** Esto es, estamos ante una madre que temía por su seguridad y la de sus hijos, y que tras vivir un

patrón de conducta indicativo de violencia doméstica, decidió huir. Aquí el señor Colón Vega —como parte de un patrón de acoso— ha utilizado procedimientos judiciales y administrativos para ejercer control, como por ejemplo, presentar dos querellas de maltrato contra menores frívolas y que fueron desestimadas por carecer de fundamentos. **Con el procedimiento que comenzó en Florida y que hoy termina con la decisión de este Tribunal, el señor Colón Vega materializa su amenaza de quitarle los menores a la señora Díaz Lebrón sin que esta tuviese la oportunidad de ser escuchada y defenderse ante el tribunal.**

En fin, la Opinión que emite una mayoría en este caso tiene el efecto de: (1) refrendar una serie de omisiones del tribunal de Florida que redundaron en la laceración del debido proceso de ley de la señora Díaz Lebrón, y (2) permitir que pase desapercibida la conducta temeraria del señor Colón Vega de abusar de los procesos judiciales para acosar y seguir violentando a la señora Díaz Lebrón. Resulta inconcebible que, en su ejercicio adjudicativo, mis compañeros y compañera de estrado pierdan esto de perspectiva y, al unísono, contribuyan a la precaria e injusta situación en la que queda sumida la señora Díaz Lebrón. No puedo avalar este derrotero injusto, insensible y errado.

Maite D. Oronoz Rodríguez
Jueza Presidenta